FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 03 2011

JAMES R. LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

Michael C. Ormsby
United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CARL SCHROEDER,

    Defendant.

CR-11-6067-LRS

Plea Agreement

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and Tyler H.L. Tornabene, Assistant United States Attorney for the Eastern District of Washington, and Defendant CARL SCHROEDER and the Defendant's counsel, John Cline, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, CARL SCHROEDER, agrees to waive indictment by a grand jury and agrees to plead guilty to an Information, filed on September 28, 2011, charging the Defendant with Conspiracy to Defraud the Government with Respect to Claims, in violation of 18 U.S.C. § 286. The Defendant understands that this is a Class D felony which carries a maximum penalty of: not more than a 10 year term of imprisonment; a fine not to exceed $250,000; not more than a 3

Plea Agreement - 1

year term of supervised release; restitution; and a $100.00 special penalty assessment.

The Defendant, CARL SCHROEDER, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3. <u>Waiver of Constitutional Rights</u>:

The Defendant, CARL SCHROEDER, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

Plea Agreement - 2

(a). The right to a jury trial;

(b). The right to see, hear and question the witnesses;

(c). The right to remain silent at trial;

(d). The right to testify at trial; and

(e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4. <u>Elements of the Offense:</u>

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Defraud the Government with Respect to Claims in violation of 18 U.S.C. § 286, the United States would have to prove beyond a reasonable doubt the following elements[1]:

> First, that on or between May 24, 2004, and December 16, 2008, in the Eastern District of Washington, the Defendant, CARL

---

[1] The Defendant and the United States agree that current legal authority binding on this Court does not require proof of an overt act in order to sustain a conviction under 18 U.S.C. § 286. The Defendant and the United States further agree that if authority binding on this Court ever does require proof of an overt act to sustain a conviction under 18 U.S.C. § 286, that the United States could prove beyond a reasonable doubt that the Defendant did in fact take an overt act in furtherance of the combination, conspiracy, or agreement in violation of 18 U.S.C. § 286 as charged in the Information.

Plea Agreement - 3

SCHROEDER entered into an agreement, combination, conspiracy, or any combination thereof, with at least one other person, to obtain or aid in obtaining payment of claims against the United States Department of Energy;

Second, that the claims were materially false, fictitious, or fraudulent;

Third, that the Defendant, CARL SCHROEDER, knew at the time that the claims were materially false, fictitious, or fraudulent;

Fourth, that the Defendant, CARL SCHROEDER, knew of the agreement, combination, conspiracy, or any combination thereof, and intended to join it; and

Fifth, that the Defendant, CARL SCHROEDER, voluntarily participated in the agreement, combination, conspiracy, or any combination thereof.

5. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for CARL SCHROEDER's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

CARL SCHROEDER worked for CH2M Hill Hanford Group Inc. ("CH2M Hill") as a Radiological Control Technician (RCT) from January 2002 to February of 2003 and then again from May of 2004 to October of 2008. CH2M Hill was a prime contractor for the United States Department of Energy ("DOE") at the Hanford Nuclear Reservation ("Hanford") located in southeastern Washington, in the Eastern District of Washington. CH2M Hill was contracted by DOE to

Plea Agreement - 4

retrieve, treat, and dispose of radioactive waste located at the "Tank Farms," at Hanford in 1999. The CH2M Hill prime contract was a cost plus reimbursement contract whereby CH2M Hill was fully reimbursed by the United States through a DOE funded line of credit for the fully burdened cost of labor allocable to the CH2M Hill prime contract (e.g. labor ostensibly not the product of fraud or false statements).

      All CH2M Hill employees who worked on the CH2M Hill prime contract and were paid by the hour, including CARL SCHROEDER, had to enter their hours worked into an electronic system known as the Time Information System ("TIS"). According to the CH2M Hill written procedures all hourly employees, including CARL SCHROEDER, were to input the time they began work at the Tank Farms and the time that they ended a shift, among other material pieces of information. In order to receive a pay check for the hours claimed employees, including CARL SCHROEDER, had to electronically submit the completed weekly information in TIS (referred to herein as "a time card") to a direct supervisor. Employees, including CARL SCHROEDER, would not get paid until and unless a direct supervisor, or other authorized supervisory employee of CH2M Hill, electronically approved the employee's time card on Monday of the following week.

      According to the CH2M Hill written procedures, by submitting a time card in TIS for approval by a supervisor CARL SCHROEDER was certifying that the information was true and correct. According to the same written procedures, by electronically approving CARL SCHROEDER's time card his direct supervisor, or other supervisory employee, was further certifying that the information entered by CARL SCHROEDER, including the amount of hours worked, was true and correct. CH2M Hill then provided this information, along with other employees information from TIS, to DOE in order to justify, in part, the CH2M Hill draw down on the DOE line of credit. In this manner, the United States ultimately paid

Plea Agreement - 5

for all of CARL SCHROEDER's wages while employed at CH2M Hill. Had DOE known that, as described below, any portion of CH2M Hill's labor costs supposedly allocable to the CH2M Hill prime contract, including the hours falsely claimed by CARL SCHROEDER, were the product of the below described time card fraud scheme and conspiracy it would not have authorized the payments and would have sought a return of any amounts paid as a result of the time card fraud scheme and conspiracy.

Upon first starting to work for CH2M Hill at the Tank Farms in January of 2002, CARL SCHROEDER learned of the time card fraud scheme and conspiracy. Specifically, it was accepted practice at CH2M Hill to claim more hours on a time card than were actually worked. For instance, an employee working a swing shift (4:30 pm to 12:30 am) could leave when the particular job justifying the overtime was completed and claim the full eight hour shift even though the job had taken significantly less than the full eight hours.

CARL SCHROEDER learned of this accepted practice through a variety of means. The accepted practice was so widespread that CARL SCHROEDER could easily observe that none of his fellow RCTs, or other CH2M Hill hourly employees at the Tank Farms, stayed for a full eight hour overtime shift. However, the time cards for these employees falsely claiming a full eight hour shift were nonetheless routinely approved by CH2M Hill supervisory employees who had themselves observed the hourly employees routinely leaving well prior to the end of an eight hour shift. Moreover, many of these approving CH2M Hill supervisory employees had themselves participated in the routine practice of leaving prior to a full eight hour shift but claiming the full eight hours when they were non-supervisory employees of CH2M Hill.

In addition, supervisors on particular jobs (known as Persons in Charge or "PICs") would routinely state, at the beginning of the shift, that there was a particular job to do, and that when that job was completed employees could go and

Plea Agreement - 6

conduct "self study," or simply "go to that place and do that thing that we do." In fact, there was no such thing as "self study," nor was there any place that employees were to go, or any activity that employees were to complete after finishing a job sufficient to fill the remaining hours of the shift. CARL SCHROEDER learned these facts and, along with his fellow RCTs and other CH2M Hill employees, took them as a cue that he could leave early and yet claim a full eight hour overtime shift which would then be approved by his direct supervisor or other supervisory employee.

In addition, direct supervisors would routinely indicate to the RCTs that they supervised when they were leaving in order to signal to the RCTs that it would soon be alright for them to leave early and yet claim a full eight hours. In this manner, direct supervisors were able to facilitate the time card fraud scheme and conspiracy while at the same time attempting to retain the ability to plausibly deny actual knowledge of the time card fraud being committed. Specifically, direct supervisors of the RCTs would say particular phrases such as "don't pass me on the way home," or ask, "what are you still doing here," or would simply make it a point to state, "I'm leaving now."

CARL SCHROEDER learned, in part through the behavior of others, that once the direct supervisor had left the Tank Farms and the job being worked was completed, he could leave and claim payment for the full eight hours rather than the actual time worked. In fact the same direct supervisors providing the information of when they were leaving prior to the end of an overtime shift were the same direct supervisors who would continually approve false RCT time cards claiming full overtime shifts.

In addition, it was common knowledge among supervisory personnel at CH2M Hill that overtime jobs were of varying lengths, that many jobs would often take substantially less than eight hours to complete, and that employees, including RCTs, routinely left the Tank Farms at the completion of those jobs. CARL

Plea Agreement - 7

SCHROEDER knew that this was common knowledge among supervisory personnel at CH2M Hill and yet he was never admonished or reprimanded in anyway for claiming full eight hour overtime shifts until he was detected by law enforcement and the detection was brought to the attention of his employer by law enforcement. In fact, CARL SCHROEDER's time cards clearly and routinely showing a consistent leave time of 12:00 or 12:30 am on swing shift overtime, were always approved by his direct supervisor and other supervisory personnel allowing him to get paid for his falsely claimed hours. Additionally, despite the known reality of varying overtime job lengths, and the fact that many of the jobs would often take substantially less than eight hours, overtime shifts were nearly always offered by CH2M Hill management in eight hour blocks further encouraging employees to claim the full eight hours even if they did not work the full eight hours.

      Further, on at least one occasion, occurring in July of 2008, CARL SCHROEDER and three other RCTs were specifically told by their direct supervisor that they could leave the job site, go into town, eat, and then return. This would necessarily entail a one hour round trip. Accordingly, CARL SCHROEDER and the three other RCTs were gone for approximately 2 hours. However, when CARL SCHROEDER submitted his time card falsely claiming to have worked those approximate 2 hours it was approved by the same direct supervisor who had authorized the leave in the first place.

      CARL SCHROEDER was aware that although it was an accepted practice and procedure at CH2M Hill to pay hourly employees, such as RCTs, for hours claimed but not actually worked, these procedures were not reduced to writing and were contrary to the CH2M Hill written procedures. In fact, it was further accepted practice at CH2M Hill to engage in patterns designed to avoid the detection of the time card fraud scheme and conspiracy by law enforcement or

Plea Agreement - 8

1  CH2M Hill internal auditors who are institutionally separate from CH2M Hill
2  management and who routinely provide information to law enforcement.
3       For instance, in May of 2008, CARL SCHROEDER became aware of an
4  incident whereby his direct supervisor received an anonymous tip that his/her
5  employees were not at the Tank Farms during an overtime shift. Based on the
6  anonymous tip the direct supervisor, who had left for the day, went back to the
7  Tank Farms and confirmed that most if not all of the employees who were
8  supposed to be working overtime that night were no longer at the Tank Farms.
9  However, rather than engaging in any formal disciplinary action against the
10 employees the direct supervisor called the missing employees to ensure that they,
11 contrary to the normal practice of the time card fraud scheme and conspiracy,
12 made sure their time cards accurately reflected the time they left. This action was
13 approved of by at least one person in CH2M Hill management above the level of
14 direct supervisor.
15      The following day CARL SCHROEDER was told by his direct supervisor,
16 along with other employees, that in order to avoid detection employees should not
17 claim more hours than worked. CARL SCHROEDER and his fellow RCTs
18 heeded this advice until, in approximately June or July of 2008, resuming the
19 standard practice of claiming a full shift while working less. The same direct
20 supervisor who had received the anonymous tip continued to approve the time
21 cards, including CARL SCHROEDER's, which again falsely claimed, among
22 other things, unvarying 12:30 am leave times, just as before. Specifically, CARL
23 SCHROEDER, began swing shifts (as opposed to other overtime shifts) again on
24 or about August 8, 2008, and at that time resumed falsely claiming unvarying
25 12:30 am leave times just as before.
26      In this manner, CARL SCHROEDER agreed, combined, and conspired with
27 others, including his direct supervisor, to provide time cards falsely claiming
28 payment for hours not worked. In providing the false information intending to be

Plea Agreement - 9

paid for hours not worked CARL SCHROEDER acted with the intent to defraud. The false information in CARL SCHROEDER's time cards was utilized by CH2M Hill to justify receiving money from the United States. The money paid to CARL SCHROEDER for hours he did not work but falsely claimed were ultimately paid by the United States.

Between May of 2004 and October of 2008, CARL SCHROEDER would routinely leave on or before 9:30 pm on swing shift and yet falsely certify on his time card that he had stayed and worked until 12:30 am, the full eight hour swing shift, or would falsely claim to have worked a full shift when in fact he had not. During that same time frame CARL SCHROEDER claimed a total of 1,765 hours of overtime. Pursuant to the time card fraud scheme and conspiracy his direct supervisor and other supervisory personnel at CH2M Hill would knowingly approve of his false time card thereby ensuring that CARL SCHROEDER would be paid for hours not worked and that, ultimately, the United States would pay for those falsely claimed hours.

Based on the fully burdened cost of labor applicable to CARL SCHROEDER during these times the United States, through CH2M Hill, paid CARL SCHROEDER at least $50,000 for the overtime hours he falsely claimed.

6.  **Waiver of Inadmissibility of Statements:**

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7.  **The United States Agrees Not to File Additional Charges:**

Plea Agreement - 10

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Information, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

8. **United States Sentencing Guideline Calculations:**

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a.) **Base Offense Level:**

The United States and the Defendant agree that the base offense level for Conspiracy to Defraud the Government with Respect to Claims, violation of 18 U.S.C. § 286, is six (6). See U.S.S.G. §2B1.1(a)(2).

(b.) **Amount of Loss Calculation:**

The United States and the Defendant agree that the amount of loss caused by the Defendant pursuant to the charged conduct is at least $50,000. Therefore, the United States and the Defendant agree that, pursuant to U.S.S.G. §2B1.1(b)(1)(D), a six (6) level upward adjustment in the offense level is appropriate.

(c.) **Acceptance of Responsibility:**

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than November 3, 2011, the United States will move for a two (2) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a).

Plea Agreement - 11

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(d.) <u>Final Offense Level</u>:

The United States and the Defendant agree that if the Court establishes the base offense level at six (6), and increases the offense level by six (6) levels due to the amount of loss being at least $50,000, and adjusts the offense level downward by two (2) levels for acceptance of responsibility, the Defendant's final adjusted offense level would be a ten (10).

(e.) <u>Criminal History</u>:

The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

9. <u>Departures</u>:

The Defendant intends to request a downward departure and/or variance from the sentencing guidelines. At this time, the Defendant is unable to articulate the basis for a downward departure or variance. The United States reserves its right to oppose any downward departure or variance consistent with the terms of this Plea Agreement.

10. <u>Substantial Assistance</u>:

The United States agrees that at sentencing it will move pursuant to 18 U.S.C. § 3553(e), which gives the Court authority to sentence below the minimum

Plea Agreement - 12

established by statute so as to reflect the Defendant's substantial assistance in the investigation and prosecution of another, all in accordance with U.S.S.G. §5K1.1 (Substantial Assistance to Authorities), which provides as follows:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
>  (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
>  (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
>  (3) the nature and extent of the defendant's assistance;
>
>  (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
>  (5) the timeliness of the defendant's assistance.

U.S.S.G. §5K1.1(a)(1)-(5).

The Defendant acknowledges that he has not completed providing substantial assistance at the time of the entry into this Plea Agreement and that the United States is not bound to move for a downward departure unless the Defendant provides information that is fully truthful and complete and that the Defendant testifies truthfully and completely at any hearing, trial, grand jury proceeding, deposition, or other court proceeding if called as a witness by any party. The Defendant understands that it may be necessary to continue his sentencing date in order to verify full compliance with this agreement.

The Defendant acknowledges that if he fails to complete his efforts to provide substantial assistance by refusing reasonable requests to meet with law enforcement agents (including attorneys for the United States Attorneys Office for the Eastern District of Washington and the Department of Justice), by providing

Plea Agreement - 13

false information or withholding information from agents, or by failing to testify completely, truthfully, and honestly, the United States is under no obligation to file a motion for a downward departure pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. §5K1.1, and this agreement shall be considered breached and null and void. The United States may then prosecute the Defendant on all available charges, including making false statements and perjury.

11. <u>Incarceration</u>:

If the Defendant does not provide "substantial assistance," as set forth in Paragraph 10, supra, the United States agrees to recommend that the Court impose a sentence within the applicable guideline range.

12. <u>Supervised Release</u>:

If the Court imposes a sentence of incarceration, the United States and the Defendant agree to recommend that the Court impose a two (2)-year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

(a.) that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer; and

(b.) that the Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer.

13. <u>Criminal Fine in lieu of Restitution</u>:

The United States and the Defendant agree that in lieu of restitution under 18 U.S.C. § 3664, the Defendant stipulates and agrees to a fine amount of $50,000 under 18 U.S.C. § 3572.

14. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before

Plea Agreement - 14

sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

15. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, and if the Defendant is ultimately sentenced to any term of incarceration, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if the Defendant commits any violation of state, local, or federal law prior to the imposition of sentence.

17. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive the right to appeal the sentence if the Court imposes a prison term of not longer than 12 months, imposes a term of supervised release of not longer than 2 years, imposes a fine of not more than $50,000, and imposes a penalty assessment or not more than $100. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on the charge in the Information be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; and the United States may prosecute the Defendant on all available charges involving or arising out of the Defendant's employment with CH2M Hill Hanford Group Inc. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

Plea Agreement - 15

18. <u>Hyde Amendment Waiver</u>:

The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Michael C. Ormsby
United States Attorney

_____     11-3-11
Tyler H.L. Tornabene                 Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about

Plea Agreement - 16

my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____    11-3-2011
CARL SCHROEDER                    Date
Defendant

    I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____    11-3-2011
John Cline                        Date
Attorney for the Defendant

Plea Agreement - 17